FEBOCK, Respondent, vs. JEFFERSON COUNTY, Appellant.

*September 10—October 8, 1935.*

The cause was submitted for the appellant on the brief of *Harold M. Dakin,* district attorney of Jefferson county, and for the respondent on that of *Mistele & Smith* of Jefferson.

FRITZ, J. Defendant demurred to the complaint on the grounds, (1) that it does not state facts sufficient to constitute a cause of action; and (2) that there is a defect of parties defendant, in that the persons in the mob who committed the unlawful acts were not joined by plaintiff as parties defendant. The allegations in the complaint which are involved in considering defendant's demurrer are as follows:

"That on the 16th day of January, 1933, the plaintiff, pursuant to public notice, endeavored to hold a public sale of chattel mortgaged property at his farm in said town of Lake Mills but was prevented from holding such sale by a mob of disorderly and riotous persons who there collected together and by force and violence prevented such sale.

"That said rioters forcibly removed the plaintiff from his farm and thereafter carried away therefrom twelve head of cattle and a cream separator, the property of the plaintiff. That the plaintiff sustained damages in the premises amounting to four hundred forty-nine and 25/100 ($449.25) dollars."

In support of the first ground, defendant contends that to state a cause of action to recover damages from a county under sec. 66.07, Stats. (which so far as here material provides that "the county shall be liable for injury to person or property by a mob or riot therein, except that within cities the city shall be liable"), it must be alleged that the damage was caused by an "unlawful assembly or riot" as defined in sec. 347.02, Stats.; and that "there is no allegation in the complaint that three or more persons were assembled in a violent and tumultuous manner to do an unlawful act, nor is there any allegation that any three persons made any attempt or motion to do a lawful or unlawful act in a violent, unlawful or tumultuous manner to the terror or disturbance of others."

In thus contending, the defendant assumes that the words "mob or riot," as used in sec. 66.07 (1), Stats., must be deemed to mean an unlawful assembly or riot as defined in sec 347.02, Stats., although the purpose and effect of sec.

347.02, Stats., is solely to define a crime and prescribe the penalties therefor; and the latter section is not referred to in sec. 66.07, Stats., which relates only to civil liability. However, assuming that no civil liability is incurred under sec. 66.07, Stats., unless there has been an unlawful assembly and riot as defined in sec. 347.02, Stats., those terms are defined therein as follows:

"Any three or more persons who shall assemble in a violent or tumultuous manner to do an unlawful act or, being together, shall make any attempt or motion towards doing a lawful or unlawful act in a violent, unlawful or tumultuous manner, to the terror or disturbance of others, shall be deemed an unlawful assembly; and if they commit such acts in the manner and with the effect aforesaid they shall be deemed guilty of a riot. . . ."

Consequently, under that definition, in order to allege or establish that there was an unlawful assembly and riot, the ultimate facts that must appear are that there was, (1) an assembly of three or more persons, (2) in a violent or tumultuous manner, (3) to do an unlawful act; or that (4) such persons, being together, made some attempt or motion toward doing a lawful or unlawful act to the terror or disturbance of others, and that they (5) committed such acts in that manner and with that effect.

The existence of such ultimate facts sufficiently appears from the allegations quoted above to constitute a cause of action, when there is applied to those allegations the liberal rule of construction applicable to a complaint challenged by demurrer, and the word "mob," which is used in those allegations, is deemed to mean a "riotous assembly; a disorderly crowd; a collection of people for some riotous and unlawful purpose" (Webster's Dictionary); or "a turbulent or lawless crowd" (Funk & Wagnall's Dictionary); and the word "crowd," as used in those definitions, is given its well-recognized meaning of "throng," "multitude" (Webster's

Dictionary), "a numerous collection of persons or things gathered closely together."

When thus construed, the allegations that "a mob of disorderly and riotous persons . . . collected together" on the plaintiff's farm, and there "by force and violence prevented" a lawful sale, sufficiently show that there was, (1) an assembly of three or more persons, (2) in a violent or tumultuous manner, (3) to do an unlawful act; likewise, those allegations, in connection with the allegations "that said rioters forcibly removed the plaintiff from his farm and thereafter carried away therefrom twelve head of cattle and a cream separator, the property of the plaintiff," sufficiently show that (4) the persons constituting that mob, being together, not only made an attempt toward doing an unlawful act to the disturbance of others, but that (5) they actually committed such unlawful acts in a violent manner, and with the effect of disturbing the plaintiff.

In further support of its first ground for demurrer, defendant also contends that the allegations are insufficient to show that there was "injury to person or property" of the plaintiff within the meaning of those words as used in sec. 66.07 (1), Stats., because the acts of the mob in, (1) collecting on his farm, and there (2) preventing his holding a public sale of chattel mortgaged property, and (3) forcibly removing him from his farm, and thereafter (4) carrying away therefrom some of his personal property, do not state that there was any physical injury to or destruction of his person or property. Defendant relies on the decision in *Yalenezian v. Boston,* 238 Mass. 538, 131 N. E. 220, in which the court said, in construing a statute imposing liability upon a city for the acts of a mob "if property . . . is destroyed or . . . injured," that "a theft of property does not signify that the thing stolen has been destroyed or injured; it imports only an injury to the possessory right of

the general or special owner to use and enjoy the thing which is capable of being stolen, by taking and carrying it away." The court cited, but declined to follow, the decisions in *Sarles v. Mayor of New York,* 47 Barb. (N. Y.) 447, and *Solomon v. Kingston,* 24 Hun (N. Y.), 562, affirmed in 96 N. Y. 651, in which it was held that under ch. 428, Laws of New York 1855, which imposed liability upon a city for property "destroyed or injured," a city was liable for the value of property carried away as well as for that which was destroyed by a mob.

Our statute, sec. 66.07, was enacted by ch. 211, Laws of 1863, and is almost a literal copy of ch. 428, Laws of New York, except for the omission of the word "destroyed" in the clause in sub. (1) of sec. 66.07, Stats.: "The county shall be liable for injury to person or property." Consequently, those New York decisions are strongly persuasive as to the interpretation which should be given to our statute; although, because they were not made until after we had adopted the New York statute in 1863, they do not have the same controlling effect which they would have had if they had preceded such adoption. *Hardenbergh v. Ray,* 151 U. S. 112, 123, 124, 14 Sup. Ct. 305; *Schneider v. Payne,* 205 Wis. 235, 241, 237 N. W. 103.

Another New York decision, *Northern Railway Co. of France v. Carpentier,* 13 How. Prac. (N. Y.) 222, 223, reasons thus:

"The next question, and the grave one, is, what is a wilful injury to property? The counsel for the defendant contends that this means only a wilful defacing of it, or a wilful depreciation of it by reducing its value; that its total destruction, or disposition, is not an injury. Bouvier, in his Dictionary (vol. 1, p. 636), says: 'Injuries to personal property are the unlawful taking and detention thereof from the owner.' Webster defines 'injury' to mean, in general, any wrong or damage done to a man's person, rights, reputation, or goods.

"We find, in this case, that the defendant herein was aiding and assisting in taking from the owner, and converting

into money, and fleeing the country therewith, the property of the plaintiffs, and consequently detaining the same from the owner. This, therefore, is an injury to personal property."

In *Spring Valley Coal Co. v. City of Spring Valley,* 65 Ill. App. 571, it was likewise held that, under a statute imposing liability upon a city "whenever any building or other real or personal property . . . shall be destroyed or injured in consequence of any riot or mob," a city could be held liable for the acts of a mob in breaking into plaintiff's store and plundering it by carrying away some of the merchandise; and in *Butte Miners' Union v. Butte,* 58 Mont. 391, 194 Pac. 149, 13 A. L. R. 746, the right to also recover damages for property carried off by a mob seems not to have been questioned under a statute which imposed liability upon a municipality "for injuries to real or personal property . . . done or caused" by a mob.

In the light of those precedents and the rule that such statutes, being remedial in character, should be liberally and fairly construed (*Long v. Neenah,* 128 Wis. 40, 43, 107 N. W. 10), we have concluded that the words "injury to person or property" in sec. 66.07 (1), Stats., do include injury sustained by an owner in his right to the possession, use, and control of his land by the acts of a mob of disorderly and riotous persons in collecting thereon and removing him therefrom by force and violence, and in preventing him from holding a public sale thereon, and also the injury sustained by reason of the mob's unlawfully taking and carrying away some of his personal property. It follows that the allegations under consideration are sufficient to show "injury to person and property" under the provisions of sec. 66.07 (1), Stats.

Defendant's contention that there is a defect of parties defendant because the persons in the mob who committed the unlawful acts were not joined as defendants cannot be sustained. Sec. 66.07, Stats., gives to an injured person an

exclusive remedy against a county or city for its failure to prevent a mob or riot from committing injury under circumstances stated in the statute. The cause of action against the county under that statute is predicated on its failure to provide proper police protection; and that omission on the part of the county constitutes a tort on its part which is a separate tort from that of the rioters in injuring plaintiff's property for which they are liable to him under the common law, and not under sec. 66.07, Stats. The rioters in committing the tort for which they incurred liability to the plaintiff under the common law were neither united in interest with, nor were they acting in concert with, the defendant; and, so far as the plaintiff is concerned, they are neither proper nor necessary parties defendant in this action by him to recover solely under sec. 66.07, Stats. Furthermore, even if the rioters could be deemed joint tort-feasors with the defendant herein, the plaintiff would not be obliged to join them as defendants, in view of the "very familiar law that one of a number of tort-feasors may be sued alone without joining the others. Each is responsible for the whole wrong." *Helberg v. Hosmer,* 143 Wis. 620, 622, 128 N. W. 439; *Humboldt v. Schoen,* 168 Wis. 414, 170 N. W. 250. The tort-feasor who is made the defendant in an action cannot complain that another who is also liable as a joint tort-feasor has not been joined by the plaintiff as a party defendant. *E. L. Husting Co. v. Coca-Cola Co.* 194 Wis. 311, 321, 216 N. W. 833.

*By the Court.*—Order affirmed.